# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARRY EMERY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 15-128 Erie |
| | § | |
| AKAL SECURITY, and | § | |
| LORETTA LYNCH, Attorney General | § | |
| of the United States, | § | |
| | § | |
| Defendants. | § | A JURY IS DEMANDED |

## COMPLAINT

This cause of action under the disability discrimination laws is to restore and make Mr. Emery whole for the unjustified removal and medical disqualification from his employment as a Court Security Officer (CSO) and prevent future misperceptions about diabetes. Accordingly, this complaint is filed under the Americans With Disabilities Act, Rehabilitation Act, and Pennsylvania Human Relations Act.

## PARTIES

1. The plaintiff, Harry Emery, is an individual who resides in Lake City, Pennsylvania.

2. The defendant, AKAL Security, is an employer located at 7 Infinity Loop, Espanola, New Mexico 87532. The defendant is a covered employer within the meaning of the Rehabilitation Act, ADA and PHRA because, among other things, they employ the requisite number of employees during the relevant time period. At all relevant times, AKAL Security, Inc. has received federal financial assistance and/or engaged in business as a federal contractor,

1

thereby rendering Section 504 of the Rehabilitation Act applicable to its employment programs and activities.

3. The defendant Loretta Lynch is the United States Attorney General and may be served with process at her business address, Office of the Attorney General, Department of Justice, 950 Pennsylvania Ave., N.W., Washington, D.C. 20530-0001. A copy of this complaint is also served on the United States Attorney for the Western District of Pennsylvania.

## JURISDICTION

4. This case is brought under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., Section 504 of the Rehabilitation Act of 1973, as amended, ("Rehabilitation Act"), 29 U.S.C. §794 et seq., and the Pennsylvania Human Relations Act. This Court has jurisdiction of this case according to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 and 28 U.S.C. Section 1331, and Section 504 of the Rehabilitation Act of 1973, as amended, ("Rehabilitation Act"), 29 U.S.C. §794 et seq.

5. Venue is invoked pursuant to 28 U.S.C. § 1391.

## STATEMENT OF THE PLAINTIFF'S CASE

6. Mr. Emery served in the Lake City Police Department from 1976 until his retirement in 2001 as Chief of Police.

7. Since May of 2004, Emery has served as a Court Security Officer (CSO) in the Federal Courthouse in Erie, Pennsylvania.

8. For the past three years, AKAL Security has had the contract with the United States Marshals Service (USMS) to provide court security at the Eric courthouse. Since AKAL took over the contract, Emery has served as the Lead CSO.

9. Emery's first line supervisor at AKAL is Site Supervisor Gary Richards, who reports to and receives weekly schedules and assignments directly from Site Supervisor Richards, but the USMS also directs performance of CSOs and the USMS has the right under the contract to remove CSOs.

10. Emery has insulin treated diabetes, and has managed his condition without failure, and it does not and has not interfered with his ability to perform the essential functions of his job.

11. Emery has had diabetes since 1995 and currently uses an insulin delivery system to administer insulin when it is needed. USMS and AKAL have been aware of his diabetes since his initial hiring.

12. During each of the annual fitness for duty reviews by USMS, diabetes never caused him to be singled out or pulled for more testing – until 2013.

13. On November 22, 2013, Emery received a call from Site Supervisor Richards informing him that USMS had removed him as a CSO because of his diabetes.

14. After the conversation with Site Supervisor Richards, Emery received a package from AKAL, on Tuesday, November 26, 2013. There was a letter stating that, per USMS orders, Emery had been removed from duty and Emery was directed to complete additional medical testing and submit more medical information by February 23, 2014.

15. The packet required that Emery provide a ninety-day insulin and food log to Akal and onward to USMS.

16. Emery was instructed to take a hearing test, a stress test, eye exam, foot exam, an A1C test, and to provide information on whether or not he was hypoglycemic.

17. The annual physical examination showed that his diabetes was not interfering with his job, but USMS singled him out for more testing anyway.

18. USMS ordered Emery to submit more blood pressure readings, more lab work, and more outpatient records. During this process he had to purchase a special glucose meter so that he could download his readings into the computer and submit them electronically.

19. Emery was also required to purchase hearing aids. He was told that his amount of hearing loss was normal; however, it was suggested by the examining physician that he go ahead and purchase the hearing aids.

20. Emery sent the additional documents to AKAL by the due date. The information was then forwarded to USMS for review and a decision.

21. After Emery submitted the required information to AKAL, he was again contacted by Site Supervisor Richards and was advised that, after seventeen weeks of being without pay, USMS had approved him to return for duty by March 24, 2014.

22. Upon his return, Emery was ordered to provide even more information from his doctors. Consequently, he saw his endocrinologist and nephrologist and they provided more information related to my diabetes.

23. On March 27, 2014, Emery FedExed the supplemental information from his doctors to AKAL's corporate office, which then forwarded the information to USMS.

24. Both the USMS and AKAL are responsible for Emery's removal from duty. Akal has signed a contract with USMS that lets USMS dictate who can work as a CSO and who cannot.

25. Additionally, the additional testing USMS subjected Emery to is illegal and violates the ADA and Rehabilitation Act because it is medically inappropriate, unnecessary, burdensome and unduly invasive.

26. USMS and AKAL do all this for only one reason: because of the mere fact that Emery has diabetes.

27. As a result of Emery's suspension, he has suffered stress and humiliation because the USMS and AKAL removed him from working and then forcing him to undergo medically inappropriate testing.

28. AKAL has violated 42 USC 12112(b)(2), which forbids " participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter." AKAL's contract with the United States Marshals Service allows the latter to remove the former's employees on the basis of disability.

29. Even though Akal knew that Emery was eminently qualified to continue working as a CSO, it removed him from duty based on his disability because it has surrendered the right to retain him, even though he is qualified in every way.

## COUNT I
## Disability Discrimination under the ADA and PHRA

30. The plaintiff is a qualified individual with a disability. The plaintiff performed his job as a Court Security Officer with distinction, but the USMS ordered that he be removed from his job because of a disability. He has an actual disability as he was assessed. He was also regarded as having a disability by them, and was removed from his job because of a record of a disability in that the government created a record of a disability that prompted the USMS to order Emery removed because of that record.

31. Defendants' conduct violates the Americans with Disabilities Act and PHRA, which prohibit discrimination in employment on the basis of disability. *See* 42 U.S.C.

12112(b). The law defines unlawful discrimination as "participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter." 42 U.S.C. 12112(b)(2). Akal cannot contract out of its obligations under the disability law by allowing the government to make a decision that is illegal under the ADA and then blindly going along with it. Akal's conduct violates three separate provisions of the statute. First, it removed Mr. Emery from his job for having a disability. 42 U.S.C. 12112(a). Second, it employed "qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities." *See* 42 U.S.C. 12112(b)(6). And third, it violated 42 U.S.C. 12112(b)(2) by its contract with the government.

32. In imposing a requirement that Plaintiff provide multiple medical testing related to diabetes while removed from work without pay, Akal has violated the ADA. The statute prohibits an employer from using qualification standards that screen out or tend to screen out those with disabilities. 42 U.S.C. 12112(b)(6). Defendant's conduct in removing Plaintiff from his job constitutes discrimination in employment on the basis of a disability or perceived disability or a record of a disability.

33. The plaintiff timely filed a charge of discrimination to challenge the disability discrimination he suffered at the hands of Akal. He requested a right to sue from the Equal Employment Opportunity Commission on his charge of discrimination and such right to sue letter has been issued. He timely files this lawsuit to vindicate his rights. He has exhausted all administrative prerequisites to filing this suit.

## COUNT II
## Disability Discrimination under the Rehabilitation Act

34. Mr. Emery incorporates by reference all of the above allegations set forth in this Complaint.

35. The Rehabilitation Act of 1973, as amended, prohibits discrimination by federal agencies, federal contractors, and recipients of federal financial assistance.

36. Section 504 of the Rehabilitation Act provides for a private right of action without the requirement of administrative exhaustion.

## DAMAGES

37. The damages suffered by the plaintiff include lost wages and benefits as well as compensatory damages for the injuries suffered at the hands of the defendants, including, but not limited to, mental anguish.

38. Further, because defendants' actions were of the sort that render the imposition of exemplary damages appropriate, the plaintiff is entitled to an award of these damages, which he seeks.

## RELIEF REQUESTED

The plaintiff asks this court to enter a judgment:

1. Declaring that the acts and practices complained of in this Complaint are in violation of the Americans with Disabilities Act, PHRA and Rehabilitation Act;

2. Enjoining and permanently restraining these violations of law;

3. Directing the defendant to pay the plaintiff actual and compensatory damages that he suffered, past and future;

4. Directing the defendant to reinstate plaintiff, or in the alternative, award him front pay;

5. Directing the defendant to pay plaintiff exemplary damages for its conduct in an amount as yet to be ascertained;

6. Awarding plaintiff pre-judgment interest on the amounts owed at the maximum rate allowed by law;

7. Awarding plaintiff the costs of this action, together with reasonable attorneys' fees and expert witness fees;

8. Awarding plaintiff post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law; and

9. Awarding plaintiff such other relief, legal or equitable, as may be warranted.

Respectfully submitted,

MORGAN & PAUL, PLLC

/s/ Gregory G. Paul
GREGORY G. PAUL
PA ID Number: 83334
618 Beaver Street, Suite 202
Sewickley, PA 15143
(412) 259-8375
(888) 822-9421 (facsimile)
gregpaul@morgan-paul.com

John Griffin, Jr.
Texas Bar No. 08460300
203 North Liberty Street
Victoria, TX 77901
(361) 573-5500
(361) 573-5040 (facsimile)

Katherine L. Butler
Texas Bar No. 03526300
1007 Heights Boulevard
Houston, TX    77008
(713) 526-5677
(713) 526-5691 (facsimile)


Counsel for Plaintiff